```
         UNITED STATES DISTRICT COURT
            DISTRICT OF NEW JERSEY
```

```
UNITED STATES OF AMERICA,
                                 Crim. No. 1:21-cr-906-NLH
     v.                          OPINION

LOUIS MURPHY
```

**APPEARANCES:**

```
LOUIS K MURPHY
71817-050
MCKEAN
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 8000
BRADFORD, PA 16701
```

   *Pro Se Defendant*

```
MARTHA KATHLEEN NYE
DOJ-USAO
402 E. STATE STREET
ROOM 430
TRENTON, NJ 08608
```

   `*Attorney for United States*

**HILLMAN**, **District Judge**

Before the Court is Louis Murphy's ("Murphy" or "Defendant") Motion for Compassionate Release and Motion for Reduction of Sentence pursuant to Criminal History Amendment 821. (ECF 115). The Government opposes the motion. (ECF 117, 120). For the reasons that follow, the Motion will be denied.

1

I. **Background**

On August 17, 2018, this case was initiated by Complaint, charging Defendant with Possession with Intent to Distribute Heroin pursuant to 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B); Possession of a Firearm by a Convicted Felon pursuant to 18 U.S.C. § 922(g)(1); and Possession of a Firearm in Furtherance of Drug Trafficking pursuant to 18 U.S.C. § 924(c). (ECF 1). Defendant entered into a plea agreement, pleading guilty to all three offenses. (ECF 86). The Court accepted the plea agreement on the record on November 14, 2022. (ECF 103). On September 30, 2022, this Court held a sentencing hearing, sentencing Defendant to imprisonment of 72 months on Counts 1 and 3 to run concurrently, and imprisonment of 60 months on Count 2 to run consecutively to Count 1, for a total term of 132 months. (ECF 95. 96). Defendant appealed his sentence, and the Third Circuit affirmed. (ECF 113).

On October 31, 2023, Defendant filed the instant motion, seeking compassionate release pursuant to the First Step Act 18 U.S.C. § 3582(c)(1) as well as a reduction of sentence pursuant to U.S.S.G. Retroactive Criminal History Amendment 821. (ECF 115). On November 14, 2023, the Government filed a Response arguing that Defendant should not be granted relief pursuant to Amendment 821. (ECF 117). On January 4, 20241, this Court ordered further briefing from the Government on Defendant's

request for compassionate release (ECF 119), and the Government responded on January 23, 2024 (ECF 120).

## II. Legal Standard

### a. Amendment 821

Prior to Amendment 821, offenders were given two additional criminal history points if they committed the underlying offense while under a criminal justice sentence.  Sentencing Guidelines for United States Courts, 88 FR 28254-01 (effective Nov. 1, 2023); U.S.S.G. § 4A1.1(e).  Part A of Amendment 821 limited the application of these "status points."  First, for offenders with seven or more criminal history points, the additional criminal history points, referred to as status points, is reduced from two additional points to only one.  Id.  Offenders with six or fewer criminal history points no longer receive any status points.  Id.

### b. Compassionate Release

According to the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'"  United States v. Sellers, No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative

3

appeals." United States v. Raia, No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

### III. Discussion

This Court will first address Defendant's Motion for Appointment of Counsel. Then, while Defendant brought his Motion pursuant to 18 U.S.C. § 3582(c)(1), he also referenced Amendment 821 to the United States Sentencing Guidelines. Thus, this Court will address Defendant's eligibility for a sentence reduction pursuant to Amendment 821, and then proceed to an assessment of Defendant's request for compassionate release.

4

### a. Motion for Appointment of Counsel

Defendant requests appointment of counsel to represent him in his Motion for Compassionate Release.  The decision to appoint pro bono counsel involves a two-step analysis.  First, a court must determine as a threshold matter whether the party's claim has "some merit in fact and law." Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993).  If a court finds that the action arguably has merit, it should then consider the following factors (hereinafter, the "Tabron/Parham factors"):

> (1) the [party's] ability to present his or her own case;
>
> (2) the complexity of the legal issues;
>
> (3) the degree to which factual investigation will be necessary and the ability of the [party] to pursue such investigation;
>
> (4) the amount a case is likely to turn on credibility determinations;
>
> (5) whether the case will require the testimony of expert witnesses;
>
> (6) whether the [party] can attain and afford counsel on his own behalf.

Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997) (citing Tabron, 6 F.3d at 155-56, 157 n.5).  This list of factors is not exhaustive, nor is any one factor determinative.  Id. at 458.  Rather, the Tabron/Parham factors serve as a guidepost to ensure that courts only appoint counsel in non-frivolous matters.  Id.

Engaging in the first step of the analysis of whether counsel should be appointed, this Court notes that Defendant

5

seeks relief one two separate grounds.  First, Defendant invokes Amendment 821 of the United States Sentencing Guidelines, arguing that he "was assessed an additional sentencing enhancement for being on probation in Philadelphia at the time of the instant offense."  (ECF 115 at 5).  On this point, Defendant's Motion does not have arguable merit, as Defendant's guideline range is unchanged by Amendment 821, as discussed in more detail below.

In addition, Defendant is ineligible for relief pursuant to 18 U.S.C. § 3582(c)(1) as he has not presented any "extraordinary and compelling reasons" for release.  Again, the Court will discuss this in greater detail below.

Because this Court had determined that Defendant's claims for relief do not have arguable merit, his Motion for Appointment of Counsel will be denied.

b. **Amendment 821**

Defendant asks the Court to consider changes to the Sentencing Guidelines.  He states that "was assessed an additional sentencing enhancement for being on probation in Philadelphia at the time of the instant offense."  (ECF 115 at 5).

The Government responds that "[a]t the time of his sentencing, the defendant was in Criminal History Category VI as a Career Offender."  (ECF 117 at 2).  The Government

6

states that "defendant is still in Criminal History VI as a Career Offender." (Id.). If he had not been classified as a Career Offender, "[h]e otherwise would have been in Criminal History Category IV with nine criminal history points, comprised of seven points for prior convictions and two 'status' points for being on parole at the time he committed the offense of conviction." (Id.). "One fewer 'status' point, or eight criminal history points, is still within Criminal History Category IV." (Id.). The Government concludes that "[e]ither way, his applicable Guideline range is unchanged." (Id.).

As set out above, prior to Amendment 821, offenders were given two criminal history points if they committed the instant offense while under a criminal justice sentence. Sentencing Guidelines for United States Courts, 88 FR 28254-01 (effective Nov. 1, 2023); U.S.S.G. § 4A1.1(e). Part A of Amendment 821 limited the application of these "status points" such that for offenders with seven or more criminal history points, the additional criminal history points, referred to as status points, is reduced from two additional points to only one. Id. Offenders with six or fewer criminal history points no longer receive any status points. Id.

As Defendant was determined to be a Career Offender, his criminal history points did not dictate his criminal history category and hence sentencing guideline range. (ECF 89 at 17).

7

Even if he had not been characterized as a career offender, before including any status points, Defendant's criminal history score at the time of sentencing was calculated as a 7. (Id.). With the two-status points he had a criminal history score of 9. (Id.). Thus, he would only be eligible, at most, for a one-point reduction. This would not change his criminal history category. His criminal history category would have been calculated as category IV at sentencing, which is the category for criminal history scores of 7 to 9. Thus, even if Defendant's criminal history score were reduced by one point, he would still have been category IV if he had not been Career Offender status. However, again, Defendant's guideline range was actually determined based on his career offender status.

If calculated now, Defendant's guideline range would remain the same as it was at sentencing. Thus, Defendant "is not eligible for a sentence reduction because the amendment does not lower his applicable guideline range." United States v. Muldrow, No. 20-14, 2024 WL 665180, at *2 (E.D. Pa. Feb. 16, 2024).

### c. Compassionate Release

First, with respect to the issue of exhaustion of remedies, Defendant avers that "Mr. Murphy has first petitioned the Federal Bureau of Prisons by submitting a letter requesting Compassionate Release, with the grounds he alleges, to Warden J.

8

Huthcineon, C/0 FCI McKean, on or about September 28, 2023. As 30 days have passed, and/or a denial has been received from the acting Warden of FCI McKean, this Court has statutory authority to hear this Motion." (ECF 115 at 2). Defendant does not attach a copy of this letter.

However, the Government does not dispute this point, stating "[f]or purposes of this response, the Government will assume Murphy has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A) because more than 30 days have passed since his reported request to the warden." (ECF 120 at 3). As this Defendant alleges that he exhausted his remedies with the BOP and the Government accepts this representation, the Court will proceed to considering whether Defendant has presented "extraordinary and compelling" circumstances supporting compassionate relief.

Defendant asserts the following circumstances as "extraordinary and compelling": (1) that he was incarcerated during the COVID-19 pandemic; (2) the disparity of his sentence; (3) that his "Pennsylvania convictions are now invalidated." (ECF 115). This Court will address each of these arguments in turn.

First, Defendant argues that his incarceration during the COVID-19 pandemic was such that his incarceration has included "24 hour lockdowns, with cold sub-par food, no visitation, no

9

ready access to medical and/or psychology staff members in a timely manner, infrequent access to showers, laundry services, or commissary purchases" as well as "no programing available - no educational classes, no vocational training, no drug and alcohol treatment programs, and no religious services offered." (ECF 115 at 3). While this Court recognizes the particular difficulties that people who are incarcerated have experienced with respect to COVID-19, the COVID-19 pandemic does not establish an "extraordinary and compelling" reason for compassionate release. The Third Circuit addressed the issue of COVID-19 as it pertains to prison populations, stating that the "mere existence of COVID-19 in society and the possibility that it may spread alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). It follows that the corresponding limitations within the prisons due to COVID-19 precautions also do not present an independent justification for compassionate release.

Next, Defendant "submits that be is entitled to relief due to the disparity in his sentence, compared to both his co-defendants and to other similarly charged defendants who have been found guilty of similar conduct, around the nation." (ECF 115 at 4). In support of this argument, Defendant asserts that he entered a guilty plea and has taken responsibility for his actions. He states that despite this, he is the "only defendant

10

on his case to remain incarcerated." (Id. at 4). Moreover, he argues that while he was sentenced in October 2021, "[t]wo of his co-defendants were sentenced within the last few weeks" as of his October 2023 filing. (Id.). He argues that if he were to be sentenced now, rather than two years ago, "the Court may have seen the profound changes that Mr. Murphy has made in his life, and the sentence may have been more in line with the lesser sentences that his co-defendants and other similarly charged defendants have received." (Id. at 5).

The Government responds that Defendant did not have any co-defendants. Rather, Defendant provided information to the Government about other individuals' separate criminal activity, pursuant to which "the Government moved for a departure under U.S.S.G. § 5K1.1." (ECF 120 at 10). The Government explains that while "Murphy, a career offender, faced a guidelines sentence of 262-327 months in prison," this Court "chose to depart to a sentence of 132 months imprisonment." (Id.).

As Defendant has not pointed to a sentencing disparity when compared to someone similarly situated and where he in fact received a significant downward departure from the guidelines, his allegation of a sentencing disparity does not provide a "extraordinary and compelling" reason for compassionate release.

Finally, Defendant argues that his convictions in Pennsylvania that made up his criminal history "are now

11

invalidated." (ECF 115 at 6). In support of this argument, he states that "[a]s of September 11, 2015, the federal government narrowed the definition of cocaine to exclude 1231-Ioflupane." (ECF 115 at 6). On the other hand, "Pennsylvania's definition of cocaine~ however, does not exclude – and therefore includes – 1231 Ioflupane." (Id. at 6-7). He concludes that "the Pennsylvania cocaine offense may not serve as a predicate to enhance Mr. Murphy's sentence." (Id at 7).

The Government responds that not only is this argument incorrect, but that "Murphy advanced this argument prior to his sentencing, and this Court explicitly ruled against him." (ECF 120 at 10). This Court notes that it addressed this exact question during sentencing and determined that the prior state court convictions constituted predicate offenses within the meaning of 4B1.2. (ECF 106 at 22:22–23:16). Defendant's attempt to relitigate a question that was already addressed at sentencing does not present an "extraordinary and compelling" reason for compassionate release. A motion for compassionate release is not the proper vehicle to relitigate a decision previously made, to raise an issue that could have and should have been raised on appeal, or to mount a post-conviction challenge akin to 28 U.S.C. § 2255.

Because this Court has determined that Defendant has not presented an extraordinary and compelling reason for

12

compassionate release, it need not assess whether the 18 U.S.C. § 3553(a)(1) factors would weigh in favor of release.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion for Compassionate Release and his request for a reduction of sentence (ECF 115) will be denied.

An accompanying Order will issue.


Date: February 29, 2024             s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.